## MAY YATES ALCORN *v.* AMELIA W. ALCORN.

1. EQUITY JURISPRUDENCE. *Injunction. Possession of lands.*

Where a party gives permissive occupancy of land to another, and that other, while in such occupancy, asserts adverse ownership, equity will, by injunction, preserve the status as to possession first established by the parties until their rights can be finally adjudicated.

2. SAME. *Motion to dissolve injunction. Discretion.*

Upon a motion to dissolve an injunction a very wide latitude is allowed to the discretion of the trial judge.

3. SAME. *Amended pleading.*

Upon a motion to dissolve an injunction the court may consider the averments of an amended bill, although filed after the motion was made.

FROM the chancery court, second district, of Coahoma county.

HON. A. H. LONGINO, chancellor.

Amelia W. Alcorn, the appellee, was the complainant in the court below; the appellant, May Yates Alcorn, was defendant there. Complainant is the widow of the late Governor James L. Alcorn; defendant the widow of James Alcorn, deceased, a son of Governor Alcorn.

The bill avers that Governor Alcorn devised Eagle's Nest plantation to complainant, upon which their home was located; that she desired her son James Alcorn to be the owner of Eagle's Nest after her death, and to that end she executed and delivered to him, after the death of Governor Alcorn, his

father, a deed conveying the fee of the estate to him, reserving for herself only a life estate for her own life therein. This deed, on its face, expressed the consideration to be the assumption, by James, of, and his promise to pay, certain debts which his father, Governor Alcorn, owed at the time of his death; these debts, however, did not equal in amount the value of the reversion conveyed by the deed. After this, complainant, because of her regard for him, leased the arable lands on the life estate to James for a year or more at a low rental. The complainant remained on the place, and was the mistress of the Eagle's Nest home. While so living she also executed a deed which, the bill claimed, authorized James Alcorn to mortgage complainant's life estate in the property to secure money with which to pay off his father's debts. The bill avers that the deed was intended, by both parties to it, to be only such power or warrant to mortgage. The answer insisted that this deed itself was a conveyance from complainant to James Alcorn of the life estate. This deed, omitting description of lands, is as follows:

"In consideration of one dollar in hand paid, the receipt of which is hereby acknowledged, and for the further consideration of my dependence on my son's management to support me and pay off and discharge the obligations connected with Eagle's Nest plantation, and to enable him to mortgage and pay off mortgages, and for the further consideration of love and affection, I convey and warrant to my son, James Alcorn, during my lifetime, as the property is his at my death, for the purpose herein set forth; and agree that there shall not be, in case of my death or otherwise, any accounts required of him for money received or expended, the following described lands, known as Eagle's Nest plantation, in Coahoma county, Mississippi, to wit (describing the lands by government survey descriptions). This conveyance is intended to convey Eagle's Nest proper to my son James Alcorn, and none of the outside lands at all. Witness my signature, this eighth of November, 1895.

"AMELIA W. ALCORN."

Soon after the execution of this deed, and before the power to mortgage given thereby had been exercised by him, James Alcorn died in Memphis, Tennessee. His body was brought to Eagle's Nest for interment, and his widow, the appellant, her children and brother accompanied the remains. They were cordially received by appellee, and the hospitalities of the home freely extended them in the time of their bereavement.

Some days after the obsequies, the appellant and her brother began proclaiming to the domestics that appellee was not the owner of Eagle's Nest plantation, and that appellant and her children were the owners thereof. They made the situation most harassing to appellee, so much so that she was driven to begin this suit for relief in the premises. The appellant, her brother and children having made a visit to Memphis, during their absence the complainant began her suit, in which she prayed for and obtained the injunction mentioned in the opinion of the court.

The defendant answered the bill, and set up a deed executed by Governor Alcorn to James Alcorn, of date only a short while before the governor's death, by which Governor Alcorn, in form, at least, conveyed Eagle's Nest plantation to James absolutely, but expressed a wish, on the face of the deed, that the dwelling house and a small part of the plantation should be appellee's in fee simple.

The deed so set up, omitting descriptions of lands, was in these words: "In consideration of love and affection, I convey and warrant to my son, James Alcorn, all the property I own in the following sections of land, excepting those I have heretofore conveyed, prior to this date, to Jessie Alcorn, Gertrude Alcorn and Angie Alcorn, my daughters, to wit (describing twenty sections of lands by sections, township and ranges). All of the above described lands lying in Coahoma county, Mississippi. And the following described lands in Quitman county, Mississippi (describing the lands by survey descriptions), together with the appurtenances added thereto. 'I give to my son, James, all the farming implements, mules, horses, horned

---

---

cattle, hogs, belonging to and used by me in cultivating said plantations. It is my wish to convey and warrant to my son, James, all the property I have remaining, with the condition that one hundred acres, including Eagle's Nest (the house), shall be my wife's in fee simple and disposed of as she sees proper. In testimony of which I have hereunto set my hand.

"April 29, 1894.               JAMES L. ALCORN."

Which deed was filed for record and recorded January 28, 1897.

Upon the coming in of the answer setting up said deed the complainant filed an amendment to her bill by which she charged that the deed last mentioned was obtained by James Alcorn by undue influence over his father; that it was executed at a time when Governor Alcorn, because of disease and old age, was incapacitated to transact business; that James Alcorn, in his lifetime, never claimed under the deed, but did various acts, specifically mentioned, which were inconsistent with the idea of his asserting any claim thereunder.

A motion was made to dissolve the injunction, which was heard, many affidavits being read on the hearing, and it was overruled by the chancellor. The defendant appealed to the supreme court.

*Perkins & Winston,* for appellant.

We submit that upon its face the deed of date November 8, 1895, from Amelia W. Alcorn to James Alcorn, was not a mere conveyance in trust with the power to mortgage for certain specific purposes, as is contended by appellee.

"The purpose herein set forth" does not refer to the "last purpose" therein set forth, as suggested by counsel for appellee, but to all the purposes set forth in the instrument. "Purpose" is used in a collective sense. The grantee was not only "to mortgage and pay off mortgages," but he was also to support the grantor. That part of the deed referring to the support which the grantor is to receive is not to be ignored.

Effect must be given to the whole instrument. It contains no defeasance, nor is there anything upon its face which necessarily implies a defeasance.

If James Alcorn did not become the owner of the life estate of Amelia W. Alcorn under that deed, charged with the obligation of furnishing her a support according to her station in life, it must be by reason of some extraneous circumstance, and not because of anything which appears in the deed itself.

Counsel for the appellant cite the following cases to sustain the contention that a chancery court has the power, by interlocutory injunction, to take from the defendant's possession all the real and personal property mentioned in the bill and put the complainant in possession of the same, to wit: *Green* v. *Green*, 5 Hare, 400; *Wheeler* v. *Noonan*, 108 N. Y., 179; *Murdock* v. *Railroad Co.*, 73 N. Y., 579; *Uline* v. *Railroad Co.*, 101 N. Y., 98; *Rutland Marble Co.* v. *Ripley*, 10 Wall., 337.

In *Wheeler* v. *Noonan, supra*, no possession was changed or sought to be changed. Defendant had piled a great number of boulders on the property of the plaintiff and plaintiff sought to compel him to remove these boulders. A mandatory injunction was granted to compel the removal of the boulders, but even here this injunction was not granted until the hearing of the case. It was not interlocutory.

In *Murdock* v. *Railroad Co., supra*, the title and right of the plaintiff was not denied or questioned. The defendant railroad company, without any right, was tresspassing on the land, and these tresspasses were continuous. No possession was changed. The court only enjoined the railroad company from committing further tresspasses, and it does not appear from the report whether this injunction was interlocutory or was granted at the final hearing.

In *Uline* v. *Railroad Co., supra*, the action was for damages for trespass. No injunction was asked for or granted. In argument the court said: The owner of land had three reme-

dies in such cases, (1) that of trespass, (2) and action in equity to restrain the tresspassers, and (3) ejectment. There was no question as to the right of the court to change possession by interlocutory decree, nor was any such question discussed or decided.

In *Rutland Marble Co.* v. *Ripley, supra,* complainants had been in possession and were ousted of possession by the defendants, possession was restored to the complainants by the court, but not by an interlocutory injunction. It was by a mandatory injunction granted on the hearing on the merits.

We have not been able to find the other cases cited, but we challenge counsel for complainant to present a single case to sustain the contention that the chancery court has authority, by interlocutory injunction, to change possession, unless the party in possession is a mere tresspasser, committing continuous tresspasses, if such party can be said to be in possession at all. We do not question the right of the court to change possession by injunction on the hearing of the case and after the rights of the parties have been determined, nor do we question the right of the court, while not changing the possession prior to the hearing, to prevent by interlocutory injunction what might turn out to be an irreparable injury to the party out of possession, as was done in the case of *Woods* v. *Riley,* 72 Miss., 73.

But in that case no possession was changed or sought to be changed. The party out of possession charged that the principal value of land consisted of timber thereon which the party in possession was about to cut and remove, and that such party was insolvent. The party in possession was not enjoined out of possession, but was enjoined only from cutting the timber until the rights of the parties should be determined; thus preserving the *status quo* and preventing irreparable injury going to the destruction of the substance of the estate, and thus preserving the property from destruction pending the determination of the title.

We submit, however, that the allegations of the bill show that the defendants were in possession when the bill was filed

and the injunction issued.　　The theory of the bill is, that James Alcorn leased the land for 1898 and had possession of the personal property during the year by consent of the complainant.　　In fact, that he had had possession of such property for a number of years.　　And, even if any acts were charged in the bill, that would or might cause irreparable injury to the complainant, the injunction should have been confined to such acts, and should have left the possession where it was until the hearing, and especially is this true, as the answer denies all of the allegations of the bill, to the effect that the complainant was the owner of the property, and sets up title by deed to the property in James Alcorn, and in the defendant as his devisee or legatee.

But the bill does not charge any acts which would cause the complainant irreparable injury; the bill does not charge that the defendants are committing any waste, or doing any acts to injure the property; nor does it charge that the defendants have sought or intended to put the complainant out of the home on the place; nor is there any allegation that they have interfered in any way with the family cemetery.

The court will perceive that the only act charged, which the complainant alleges will cause her irreparable injury, is the fact that the defendants were claiming to be the owners of the property.　　In the original bill it is alleged that such claim was disquieting the tenants and laborers on the place, which place, the bill shows, was rightfully in the possession of the defendants, at the time such claim was made, and when the injunction issued, and which tenants were at that time the tenants of the defendants.　　In the amended bill it is charged that the making of such claim excited discontent among the servants and employes of the complainant, not that the defendants had directly or intentionally excited any such discontent, and that, by reason of the assertion of such claim—*i. e.*, as a consequence thereof—the complainant is, and was, subjected to many inconveniences and indignities upon her said estate, and within the threshold of her very home, etc.

76—Miss 58

We submit to the court that the defendants had a right to claim to be owners of the property, and that if any such results followed from the making of such a claim, as alleged by the complainant, they could not be ground for an interlocutory injunction.

So far as the defendant May Yates Alcorn is concerned, it is not charged that she has shown complainant any indignity or put her to any inconvenience.   The case in a nutshell is this: The defendants were in the possession of all the property under a paper title good on its face, claiming to be the owners thereof. Complainant occupied jointly with the defendants the dwelling, outhouses and curtilage.   The defendants were not denying the rights of the complainant to continue such occupancy of such dwelling, outhouses and curtilage.   On the contrary, they recognized such right and the right of the complainant to a support from the property under the deed conveying her life estate to James Alcorn.   The defendants were doing no act to injure the property; they were doing no act to disturb or destroy the sacred associations of the complainant so much dwelt upon by counsel; they were not interfering in any way with the full enjoyment by the complainant of the home of the place just as she had enjoyed it in the lifetime of James Alcorn; they had offered no indignity to the complainant; they had put her to no inconvenience; the defendant had lived for years in the same home, it would appear, without inconvenience to complainant, but they had possession of the farm and personal property and claimed ownership under their paper titles.   This is the head and front of their offending, and this is the act which the complainant alleges was causing her irreparable injury by disquieting tenants, exciting discontent among her employes and servants and subjecting her to indignities and inconveniences.   She thereupon attacked the validity of her own deed and that of her husband to James Alcorn, her son, on the ground of fraud on the part of her son and incompetency on the part of her husband, and asked the court *in limine*, at the

very start of the suit by interlocutory injunction, to put the defendants out of the home and out of the possession of the farm and put her in, to change the *status quo* and adjudge in advance that she was entitled to possession and that the paper title under which the defendants hold is a nullity.    The defendants were enjoined from going on the home at all and from going on the farm, except to gather and remove the crops of cotton; they were even prevented from looking after the goods in the store, which were admitted to belong to them.    They were enjoined also from interfering with the alleged ownership of the complainant and her right to control the property. Thus the defendants were put out and the complainant put in possession.    The result of this injunction has been that the defendants have already suffered very great and irreparable injury in the loss of the stock of goods, books, accounts and papers, and now the complainant asks the court to continue the injunction, although wrongfully granted, because forsooth she has taken possession of the farm by reason of such an injunction and made advances to the tenants without even stating the amount of such advances.    By taking advantage of a wrongful act she seeks thereby to perpetuate the wrong.

*J. W. Cutrer,* for appellee.

It cannot be doubted, from the record, that appellee has made a case which must lead the court to the conclusion that it is more than probable she will ultimately prevail in her contentions.    It is not denied, either, that it is in the power of a court of chancery to make such orders and enter such decrees as have been made in the case at bar.    So that, we have a case in which the jurisdiction of the court is unquestioned, and where orders have been entered in such case by the court which are not beyond the power or out of the province of the court. The whole controversy, then, must limit itself to the question whether or not there has been an unwise or injudicious exercise of a discretionary power by an inferior tribunal, and an

effort to have this court review and correct the discretion of the lower court. My contention is that no state of the case is presented which calls for a corrective at the hands of this court.

It is one of the rules, with reference to injunctions, that the granting of a preliminary injunction is not *ex debito justitiæ*, but the application is addressed to the sound discretion of the court, where private rights are involved, according to the circumstances of the particular case. *Erhardt* v. *Boars*, 113 U. S., 537; 1 High on Injunctions (3d ed.), sec. 11, and notes.

It is only necessary, in seeking relief by injunction, that the plaintiff show some clear, legal or equitable rights, and well-grounded apprehension of immediate injury to those rights. 1 High on Injunctions, secs. 1–8.

Injunctions are granted to preserve rights in real estate where irreparable damage is threatened, no matter what may be the character of such damage. The term "irreparable damage," to prevent which injunctions may issue, includes threatened wrongs of repeated and continuous character, or which occasion damages which are estimable only by conjecture, and not by any accurate standard, such as the loss of trade, the destruction of the means of subsistence, and invasion of home, or other wrongs of like character. 10 Am. & Eng. Enc. L., 877; *Jones* v. *Brandon*, 60 Miss., 556; *Beatly* . v. *Kurtz*, 2 Peters, 556.

Injunctions are issued not only to preserve a status or to forbid the doing of any particular acts, but the courts now incline freely to the issuance of mandatory injunctions. The courts of England have always granted this latter kind of injunctions with liberality. The courts of this country originally were not given to the exercise of this branch of their power with anything like freedom, but these courts have progressed rapidly in recent days, and now grant writs of this character with daily growing freedom from the former precedent, according to their judgment of the exigencies of the case presented. This right is no longer questioned. It had been es-

tablished without doubt, and such injunctions are granted on interlocutory applications.     Where there is a clear and unlaw-ful invasion of complainant's rights, the injury being a continuing one, a mandatory injunction may be granted in the first instance.     In determining whether such injunction shall issue, the courts should take into consideration the relative convenience or inconvenience which would result to the party from granting or withholding the relief, and will be governed accordingly.     1 High on Injunctions, sec. 2; 1 Beach on Injunctions, secs. 99, 104, 118.

It is the favorite exercise of the issuance of a writ of injunction to prevent vexatious litigation and a multiplicity of suits, and whenever the rights of the party aggrieved cannot be protected in the ordinary course of proceedings at law, or except by numerous and expensive suits, a court of equity may properly interpose and afford relief by injunction.  1 High on Injunctions, sec. 12; *Mills* v. *New Orleans Seed Co.*, 65 Miss., 391.

The rule that requires the establishment of a legal right by law, as a condition precedent to relief in equity, has been abolished in this state.     A court of chancery has jurisdiction in the first instance to try title, cancel deeds and other clouds upon title, and to decree and displace possession.     *Woods* v. *Riley*, 72 Miss., 73.

Without this expressed power courts of equity have always maintained, as inherent to their jurisdiction, the power to control the possession and disposition of property.     Ordinarily, it is true that a court of equity will not disturb the possession of property, yet, where the possession of the defendant has been acquired under exceptional circumstances, or by an interruption of the prior and lawful possession of the complainant, where the right of the complainant is clear and certain, equity will interfere without compelling the complainant to establish his title by an action at law, and an injunction constraining the claimant from molesting the complainant in his possession and

enjoyment of property will not prevent such claimant from proceeding with his proper action, at law or otherwise, to try his rights. The court, in its discretion, has the power to control the management and control of property pending a final adjudication of the rights of the respective parties. Where the occupant of land seeks to remain in possession thereof after the period of his right, the courts will restrain the occupant from maintaining such possession and committing a continuing trespass upon the property, and will require him to move from the premises. *Wheelock* v. *Noonan*, 108 N. Y., 179; *Murdock* v. *Railroad Co.*, 73 N. Y., 579; *Railroad Co.* v. *Railroad Co.*, 86 N. Y., 128; *Avery* v. *Railroad Co.*, 106 N. Y., 421; *Irwin* v. *Dixon*, 9 Howard (U.S.), 10; *Rutland Marble Co.* v. *Ripley*, 10 Wal., 339; *St. Louis* v. *Knapp, etc., Co.*, 104, U.S., 658.

An injunction will lie to prevent a railroad company from making excavations, laying tracks and laying switches over the land of another. *Lake Erie Railroad Co.* v. *Michener*, 107 Ind., 465.

When numerous acts are being continued under repeated threats, and under a claim of right, by one person upon or about the premises of another, and the injury resulting from such act is, or would be, trifling compared to the amount of damages recoverable therefor, an injunction will lie to restrain the commission of such acts, and to preserve the peace of the owner. *Lembeck* v. *Nye*, 47 Ohio St., 336; *Avery* v. *Railroad Co.*, 106 N. Y., 421; *Tallman* v. *Railroad Co.*, 23 N. E. Rep., 1135; *Baron* v. *Korn*, 27 N. E. Rep., 805; *New York Central Co.* v. *Rochester*, 28 *Ib.*, 417.

The circumstances under which injunctions will issue changing the possession of property, real or personal, and otherwise granting affirmative relief, are not restricted or designated, but the power is exercised in a great variety of cases, and the question seems to be not what has been done, but what, in the discretion of the court granting or determining on the issuance of the writ, should be done, in its discretion, upon the particulars of each case where relief is sought.

A new application of the writ is found in the case where employes of the receiver of a railroad company were enjoined from combining and conspiring to quit his service with the object and intent of crippling the property in his custody or embarrassing the operation of the railroad. *Arthur* v. *Oaks*, 25 L. Rep., Ann., 414; *Fulton* v. *Greacen*, 36 N. J. Eq., 216; *Whitecar* v. *Michener*, 37 N. J. Eq., 14; *New Jersey Co.* v. *Trotter*, 38 N. J. Eq., 3; *Leavitt* v. *Winder Land Co.*, 54 Fed. Rep., 439; *Root* v. *Woolworth*, 150 U. S., 401; 1 High on Injunctions, sec. 432; 27 N. J. Eq., 364, and 82 Pa. St., 373; *Green* v. *Green*, 5 Hare, 500; *Atlantic & Pacific Telegraph Co.* v. *Union Pacific Railroad Co.*, 1 McCreary, 541; *Smith* v. *Wadsborough*, 4 Jones Eq., 303; *Coit* v. *Horn*, 1 Sandford (N. Y. Ch.), 1; *Hatcher* v. *Hampton*, 7 Ga., 50; *Metbone* v. *Thornton*, 10 Wis., 159; *Hart* v. *Leonard*, 42 N. J. Eq., 418, 420.

.I wish, however, to impress upon the court that the injunction in this case did not deprive appellant of the possession of anything. Before the issuance of the injunction appellant had voluntarily returned to her home in Memphis, Tennessee, with her son, and has remained there continuously until this day, as an examination of the record discloses. Even if there were no direct precedent for the process in this case the exceptional circumstances are such that the court would not fail to issue its remedial writ for the benefit of complainant. There are times when, to forward the cause of right, the timbers of law will be strained until they crack, though there is here no need for such a tension.

The dissolution, like the granting, of an interlocutory injunction is largely a matter of judicial discretion, to be determined by the nature of the particular case under consideration. 2 High on Injunctions, secs, 1467, 1495, 1508; *Ib.*, secs. 286, 287, 290, 307, 308, 313.

Where it is apparent, from the answer, that there are still questions of doubt, on which additional light is requisite, a dis-

solution should not be granted.    2 *High on Injunctions,* sec. 1510; *Jones* v. *Brandon,* 60 Miss., 556.

And so, also, if the questions of fact involved are evenly balanced upon affidavits on the motion to dissolve, the motion should be denied, and the injunction retained to the final hearing.    An answer by way of confession and avoidance, as distinguished from a direct traverse, as is the answer of the appellant, is not sufficient to meet the requirements of the rule.    2 *High on Injunctions,* sec. 1513; *Coleman* v. *Hudspeth,* 49 Miss., 562.

Argued orally by *Calvin Perkins,* for appellant.

WHITFIELD, J., delivered the opinion of the court.

This appeal was granted to settle the principles of the cause. The only point for adjudication, however, is the propriety of the action of the chancellor in retaining the injunction till the final hearing.    And all that we shall say will be understood as addressed solely to the solution of that question.    We have given this record a most thorough consideration, and from it are satisfied that the appellant's counsel puts his contention too strongly when he characterizes the injunction as having for its sole object the putting the appellant out of, and the appellee into, the possession of the Eagle's Nest plantation.

It is to be noted that, prior to filing the bill, appellants went to Memphis, and have not since been on the property involved.

The difficulty with counsel's position is that the character and quality of possession set up by appellant now, since the death of her husband, from which she says she is being shut out, is not at all the character and quality of possession set up by her and her husband when he lived.    It is clear that he never claimed under the alleged deed from his father, of date April 28, 1894, which was not put to record for some three years.    And it is also satisfactorily shown that her husband did not claim, under the instrument of date November 8, 1895,

as absolute owner of the property. We are not speaking of how these things may turn out to be on final hearing, on full proof; but on the record as it now stands, it is clear to us that the alleged deed of April 28, 1894, was void for incapacity on the part of Governor Alcorn to execute it, and that if the instrument of November 8, 1895, had any other effect than to empower James Alcorn to mortgage the property to pay debts, etc., and passed the legal title to him, it so passed it in trust, the whole beneficial interest remaining in Amelia W. Alcorn, his mother.

The facts in testimony in connection with the instruments, giving them this character, and the only possession James ever set up being of this character and quality in strict recognition of his mother's life estate in not one hundred acres, but the whole of that part of Eagle's Nest devised to her by her husband, it is not for the appellant, the daughter-in-law, now to change the character and quality of that possession, for the time it lasted, into an adverse holding. Because since her husband's death and the record of the deed of April 28, 1894, she now elects to claim all save one hundred acres as hers and her son's under the instruments referred to, now for the first time invoked to show title in her husband, it does not at all follow that this newly asserted character of possession can, by some magic *ex post facto* operation, be imputed to a possession of a wholly different kind held by her husband till his death.

The true view of the bill is that it seeks to preserve the possession of the appellee as it was, to maintain the status as to possession as it had been between mother and son until the chancery court, having full jurisdiction of the subject-matter, shall finally dispose of the rights of the parties. In this view the principles of the cases of *Woods* v. *Riley*, 72 Miss., 73; *Jones* v. *Brandon*, 60 Miss., 560, 561; *Marble Co.* v. *Ripley*, 10 Wall., 354; *Beaty* v. *Kurtz*, 2 Peters, 566, and of the cases cited in note at page 375 of 1 Am. St. Rep., are decisive of the correctness of the action of the learned chancellor. It was

proper to look to the amended bill, though the amendment was made after the motion to dissolve was made. *Conover* v. *Ruckham*, 34 N. J. Eq. Rep., 297.

Many considerations are influential with a chancellor in determining his action as to dissolving an injuction, or retaining it, till full proof on final hearing. As to whether the complainant will suffer more from the dissolution than the respondent from its retention: *Frieton* v. *Grannon*, 36 N. J. Eq. Rep., 221—as, where the bill shows a probable right and probable danger to that right, unless the injunction be retained; and many other considerations addressing themselves to the sound judicial discretion of the court applied to dissolve it. Very wide latitude, necessarily, must be allowed the trial court. The effectuation of right, the vindication of justice, is the object, as everywhere, in judicial proceedings. And when fraud is charged, the reasons for retaining the injunction are greatly strengthened. *Hollis* v. *Williams*, 43 Ga., 217.

Once more remarking that our observations are addressed merely to the action of the chancellor in retaining this injunction, and that whilst it is true that mandatory injunctions are granted with great caution prior to full hearing, but are to be granted prior thereto, nevertheless, "where the exigencies of the case are great" (see note to 20 L. R. A., 161), and specially that we rest our decision in this case upon its very extraordinary facts, we hold that the injunction was properly retained until final hearing.

*Affirmed.*