GORDON (MARX) *v.* GORDON *et al.*

(In Banc. Feb. 28, 1944.)

[17 So. (2d) 191. No. 35564.]

Cooper & Thomas, of Indianola, for appellant.

Stovall Lowrey, of Clarksdale, and **Ernest Kellner,** of Greenville, for appellee.

Argued orally by **Forrest G. Cooper**, for appellant, and by **Ernest Kellner**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On May 12, 1942, a decree of divorce was granted by the chancery court of Claiborne County in the suit between Loretta H. Gordon and William P. Gordon, then both residents of that county, and by the decree the custody of Betty Gordon, then about four years old, the child of the parties, was awarded as follows: To the mother for six months beginning on said date, and to the father for six. months beginning on November 12, 1942, and thence alternately for periods of six months each until the child should arrive at school age. Apparently it was expected that the father would soon enter the armed services, and it was further provided in the decree that the father might designate some person to have the custody for him during the respective six-month periods wherein he would have the dominant custody. Jurisdiction was expressly retained in regard to the custody of the child.

Under the decree the mother was entitled to the custody from May 12 to November 12, 1943. During this period the mother went to reside in Mobile, Alabama, and took the child with her. On August 1, 1943, the grandmother of the child, Josie B. Gordon, a resident of Washington

County, went to Mobile and requested the mother to permit the child to visit with the grandmother in Washington County for a short time, which request was granted; and it may be here mentioned that in the meantime the father had enlisted in the armed services and had designated his mother, Josie B. Gordon, to have custody of the child for him under the stated decree.

While the child was thus in Washington County she became indisposed but not seriously so, and in any event was not returned to the mother. The mother therefore went to Washington County in September to get the child but failed to see the grandmother or the child, and received information to the effect that the child would not be surrendered. The mother thereupon went to Claiborne County, and on September 21, 1943, filed in the original case a petition setting forth the aforestated facts, and prayed in her petition that a decree be entered awarding the permanent custody of the child to the petitioner, the mother, and that the grandmother be adjudged in contempt.

On this petition a citation was issued by the clerk addressed to the sheriff of Washington County and by which the sheriff was directed to summon the grandmother, Josie B. Gordon, to appear before the chancery court of Claiborne County in vacation on October 1, 1943, to show cause why the immediate and permanent custody of the child should not be awarded to the mother, and why the grandmother should not be adjudged in contempt. The father of the child was not made a party to the petition and no effort was made by petitioner to notify him in any way of its pendency.

Acting evidently on the advice of counsel, the grandmother took the position that the stated citation was void and on the ground that the citation had not been authorized by the chancellor of the Claiborne County Court, and the grandmother did not appear, although the citation had been duly served upon her. The chancellor was present in the vacation court in Claiborne County on the

return day, and proceeded to a vacation hearing and thereupon made a decree in vacation which although not, certain in its terms is subject to the interpretation that thereby the permanent custody of the child was attempted to be awarded to the mother, and the decree further provided that a writ be issued by the clerk directed to the sheriff of any county, wherein the grandmother and the child might be, commanding the sheriff to take the child and deliver her to the mother, and to take the grandmother into custody and to have her before the chancery court of Claiborne County on November 8, 1943, to answer the charge of contempt.

This writ came into the hands of the sheriff of Washington County on October 2, 1943, having in fact been brought there by the mother personally. But before the writ was served, the father and the grandmother filed their bill that day in the chancery court of Washington County for an injunction against the execution of the writ, and, on the fiat of the chancellor of that district, an injunction writ was served upon the sheriff and upon the mother then present in the county.

The bill for injunction alleged that the decree made on October 1, 1943, by the Claiborne County Court was void as to the father for two reasons, first because the father had not been in any manner made a party to the petition on which the decree was attempted to be made, and second because made in vacation, and that it was void as to the grandmother for the reason already heretofore stated. The bill further alleged that the mother was then residing in Mobile under such conditions and in such manner of living as to make her grossly unfit to have the custody of the child, and that the real and ultimate purpose of the writ which the mother had procured was to permanently take the child into that surrounding and into another state beyond the jurisdiction of the courts of this state. The allegations of unfitness were direct and specific and are admitted by the demurrer later to be mentioned.

The mother did not move promptly to dissolve the injunction but waited until November 9, 1943, when she filed her motion to dissolve, and then upon the bill and demurrer thereto. At that time, the day for the grandmother to appear in the Claiborne County Court had passed and before the statutory notice of the motion to dissolve could be given the period for the custody of the child to return to the father would intervene which as already stated was November 12, 1943. The motion was not to modify the injunction but to dissolve it in toto. The motion to dissolve was heard on November 27, 1943; was overruled and an interlocutory appeal was allowed.

If the decree of the Claiborne County court was one awarding the permanent custody of the child to the mother the decree in that respect was void on the two grounds stated, and first because no notice was given to the father. The authorities are in general accord that when in substantial or major aspects a decree of custody is to be made or modified a proper notice and opportunity to be heard must be given to the adverse party. 17 Am. Jur., pp. 519, 520; 27 C. J. S., Divorce, sec. 317, p. 1193, and see the cases annotated in 76 A. L. R. at p. 253, and particularly Gitsch v. Wight, 61 Utah 175, 211 P. 705. We are not here concerned as to how the notice may be served, or whether such a notice or citation or summons may be served on a party in the armed services. It is sufficient here that none whatever was attempted.

And in the second place a decree of permanent custody cannot be made in vacation. The only statute which allows vacation decrees in respect to the custody of a child is Section 1420, Code 1930, and this by its express terms limits the vacation action to orders of temporary custody, and being temporary would expire with the convening of the next term of the court regular or special, which in this case was Monday, the first day of November, 1943. See and compare Lanham v. Lanham, 194 Miss. 872, 14 So. (2d) 215.

.When, therefore, the motion to dissolve came on to be heard on November 27, 1943, the original decree of the chancery court of Claiborne County made as aforesaid on May 12, 1942, was in full force and effect, without any valid modification, and under which the legal custody of the child was vested in the father as of November 12, 1943, and for the six months' period from November 12, 1943, to May 12, 1944; and the father having designated the grandmother to keep the child for him she was entitled during that period to have the child without interference by the mother. Had, then, the chancellor wholly dissolved the injunction on November 27, 1943, it would have been to allow the sheriff to take the child and deliver her to her mother when by the terms of the only existing valid decree of the chancery court of Claiborne County, the father, and through him the grandmother, was then entitled to have and keep the child, and until May 12, 1944. In other words, when the motion to dissolve was heard, the right of the mother to have the enjoined writ served or executed had expired, and she no longer had any right to it.

And this brings into view a familiar rule governing the granting or dissolution of injunctions, and that is, that in this respect equity acts in the present tense and the action to be taken is dependent upon present and future conditions rather than those existing when the suit was brought. 32 C. J., p. 77, 28 Am. Jur., p. 201; Alsager v. Peterson, 31 S. Dak. 452, 141 N. W. 391, Ann. Cas. 1915D, 1252, and authorities therein cited. This rule is illustrated by the note 73, p. 479, Griffith Miss. Chan. Prac., and the cases cited therein to the effect that although upon the original bill and the facts as they existed at the time the bill was filed, the injunction issued thereunder should be dissolved, yet if upon the motion to dissolve, it is apparent from the record that the applicant would be immediately entitled to another injunction, the motion to dissolve will be overruled. The face of the bill and exhibits in this case show the fact that the

father, and through him the grandmother, was entitled to have and retain the custody of the child from Nov. 12, 1943 to May 12, 1944; and, as already stated, the motion to dissolve would have had the effect, if sustained on November 27, 1943, to deprive them of that custody, and the court properly declined to take any such action as would effectuate that illegal result.

It may be conceded that the injunction should never have been issued and that all that could have been validly required as a condition to allowing the writ from Claiborne County in the hands of the sheriff to be served, was a bond from the mother to secure the return of the child to this state on November 12th, Campbell v. Lovgren, 175 Miss. 4, 166 So. 365; and it is assumed that had the motion to dissolve been presented before the chancellor at any time reasonably before November 12th, the motion would have been sustained with no reservation other than the execution of such a bond. But these are academic questions now, for the reason already stated that the motion to dissolve was not presented until the writ had become functus officio as to the appearance of the grandmother in Claiborne County, and until the mother was no longer entitled to the service of the writ, so far as the delivery to her of the child was concerned.

As it now stands, however, the injunction is far and away too broad. Had the motion been to modify the injunction instead of one seeking to dissolve it in its entirety, the motion to modify would doubtless have been sustained. And upon the remand a motion to modify will still be in order. We do not assume to point out in detail the various features wherein modification should be adjudged. The trial court was not so requested, and hence such details are not before us for review.

The facts as shown by the record now before us disclose, in view of the law, a successive series of errors and missteps both by the mother and the grandmother. (1) The mother was in serious error in taking the child to another state and there subjecting it to the living con-

ditions charged in the bill and admitted by the demurrer. (2) The grandmother when she learned of this situation, as she now charges, should have notified the father of the child, and with his joinder and consent should have filed a petition in the chancery court of Claiborne County for a temporary order for the custody of the child until the coming on of court in term time, which would be, as already stated, the first Monday in November, 1943, and not having done so, she should not have held the child from the mother when the mother came to Washington County for the child in September. (3) The mother should not have added to the trouble by an attempt later in September to get a void vacation order awarding permanent custody to her, and should have contented herself by obtaining a citation for contempt and a writ of assistance good until November 12th. (4) The grandmother should have appeared in Claiborne County in response to the citation of September 21st. That citation was not void but was good, and her counsel in their advice to her, as they now confess, had overlooked the cases Whitley v. Towle, 163 Miss. 418, 141 So. 571, and Darby v. Arrington, 194 Miss. 123, 11 So. (2d) 220. She should have appeared and showed or obtained time to show the conditions which she charges existed in the state where the mother was intending to take the child, and at least she could have obtained an order for a bond for the return of the child to this state in November, and this being only a short time then in the future, the child could not be seriously hurt in that short time. (5) The mother should not have confronted the grandmother on October 2, 1943 with a writ for the possession of the child under a void decree for permanent custody, this being the construction of the decree which all the parties seem to place on it, without any offer of assurance that the child would be brought back into the state in November; and (6) even then the grandmother should have required nothing further than the execution of a bond, as already mentioned. (7) The mother, if she ex-

pected relief from the injunction, should have moved promptly to dissolve or modify it and not wait, as she did, until the time during which she would have had a right to dissolve it had expired.

Nothing said herein is in contravention of the right and authority of the chancery court to hear and determine petitions for contempt in vacation. That is provided by Section 367, Code 1930, and is upheld in such cases as Johnson v. Johnson, 189 Miss. 561, 198 So. 308. Nor is the failure of service of one citation a bar to the issuance of another for the same cause. All we are holding on the contempt feature is that the citation of October 1, 1943, returnable on November 8, 1943, became functus officio when not served before the date of its return. 50 C. J., p. 481; 42 Am. Jur., p. 26.

Affirmed and remanded.

## Specially Concurring Opinion.

**Roberds** and **McGehee, JJ.**, delivered specially concurring opinion.

We concur in the controlling opinion because, and only because, the process had become functus officio on the date that the motion to dissolve the injunction was heard. On the remand of the cause it should be dismissed for the reason that the chancery court of Washington County had no jurisdiction of the issues involved in this litigation, either as to the custody of the minor or the proceeding for contempt against Mrs. Josie B. Gordon.

## Dissenting Opinion.

**Smith, C. J.**, delivered a dissenting opinion.

I am of the opinion that this writ of injunction should not have been issued for the reason that this whole controversy was for the determination of the chancery court of Claiborne County, and, as this is an appeal from an interlocutory decree, this court should now definitely decide that question for the guidance of the court below on the return of this case thereto.