SUGG, Justice, for the Court:
A temporary injunction was issued without notice from the Chancery Court of Madison County which enjoined Charles Campbell from disposing of his 1973 cotton crop. A motion to dissolve was overruled and on final hearing complainant, Staple Cotton Cooperative Association, was awarded specific performance of its contract with Campbell together with liquidated damages and attorneys fees. The questions are: (1) Should the temporary injunction have been dissolved? (2) Was Campbell’s contract unenforceable because the association permitted one of its directors to enter into a contract with the association differing in any way from the business relations accorded regular members of the association in violation of Mississippi Code Annotated section 79-19-21 (1972) ? (3) Did the association release some of its members from their marketing agreement ?
The Staple Cotton Cooperative Association is an agricultural cooperative marketing association which operates under the provisions of Mississippi Code Annotated section 79-19-1 (1972) et seq. and is engaged in the business of marketing cotton grown by its members. Campbell is a cotton farmer in Madison County and was a member of the association in 1973, having executed a “Membership and Marketing Agreement.” Under Section 5A of the membership and marketing agreement, the association agreed to sell Campbell’s cotton by one of the methods set forth in paragraph 6A and 6B, the method to be selected by Campbell. Paragraph 6A *380 covers the pool option under which a member’s cotton is lumped with other cotton of like grade-^nd staple and sold by the association. Section 6B is the factor option which provides a member with two marketing methods. Under one method the association displays a member’s cotton to prospective buyers and reports the price offered by the buyer to the member who accepts or rejects the price offered. Under the other method the member may forward contract his cotton designating the association as the marketing agent. A forward contract is a contract by which a member sells cotton to be produced by him before it is harvested, and in some cases, before it is planted.
In March 1973 Campbell executed a forward contract with the association by which he agreed to sell and deliver to the association all of the cotton produced on and ginned from his land for the crop year 1973 at 31.50 cents per pound for all cotton delivered on or before December 10, 1973 and 26.50 cents per pound for all cotton delivered between December 10, 1973 and January 31, 1974.
Prior to the Fall 1973 harvest, the price of cotton on the open market rose dramatically. During October and November 1973 defendant picked, ginned, and placed most of his cotton in a warehouse but did not deliver any of the negotiable warehouse receipts to the association as required by section 4(a) of the marketing agreement which provides:
All cotton shall be delivered at the earliest reasonable time after picking or ginning, to the order of the Association at the nearest public warehouse, or shipment as directed, to the Association, and by delivery of the endorsed warehouse receipts or bills of lading properly directed.
The association filed its bill on November 28, 1973 and a temporary injunction issued without notice enjoining defendant from selling or disposing of his cotton. Campbell answered the bill, moved to dissolve the injunction, and in his answer admitted that he refused to deliver the negotiable warehouse receipts. He claimed that he should not be required to deliver his cotton because his contract was void by reason of preferential treatment accorded a member of the board of directors of the association.
Mississippi Code Annotated section 79-19-33(2) (1972) provides that the association is entitled to an injunction to prevent the breach of a marketing contract and to a decree for specific performance thereof. It also provides that the association is entitled to a temporary injunction against a member pending the adjudication of the action. Campbell’s motion to dissolve was properly overruled because he had not delivered his cotton under his marketing agreement and forward contract. Even if the injunction improvidently issued in the first instance, the association was entitled to have the injunction continued on the hearing on motion to dissolve. This follows from the rule that, because equity acts in the present tense, an injunction will not be dissolved despite its wrongful issuance when it is apparent that complainant would be entitled to another injunction immediately upon dissolution of the first injunction. Gordon v. Gordon, 196 Miss. 476, 485, 17 So.2d 191 (1944); Belzoni Oil Company v. Yazoo & Mississippi Valley R. R., 94 Miss. 58, 77-78, 47 So. 468 (1908).
Campbell’s affirmative defense was that his contract was void because a floating price forward contract executed by some members amounted to either a contract for profit between a board member and the association contrary to Mississippi Code Annotated section 79-19-21 (1972), or a release of these members from their marketing agreement in violation of the rule laid down in Staple Cotton Cooperative Association v. Borodofsky, 143 Miss. 558, 108 So. 802 (1926).
*381 The evidence disclosed that Sturdivant and Bishop, Inc., and several other growers of Deltapine 16 cotton from a designated area negotiated “floating price” forward contracts with W. B. Dunavant and Co. in November 1972 for their 1973 cotton crop and designated the association as marketing agent. Section 3 of the Sturdi-vant contract is as follows:
3. It is understood and agreed that this is a “floating price’’ type of contract, with prices and terms as follows:
The initial starting base price on this contract as of November 17, 1972, is 27.50$ per pound. This 27.50$ as the starting base is based on December, 1973, New York futures at 31.00$. If and when December, 1973, New York futures trade at 32.00$, then the contract price will be 28.00$; or, in other words, with every 100-point rise above 31.00$, Producer and Seller will receive a 50-point increase in the contract price. The increase in price does not become effective until a 100-point increase in the futures market has been reached above the base of 31.00$. Producer and Seller shall continue to receive a 50-point increase in the contract price with every 100-point increase in the futures market thereafter until the final date of September 1, 1973. At no time after the advance in price has occurred for Producer and Seller’s account will he receive less than the advanced price.
It is agreed that when the mills receive and mike the cotton, on any bales miking 5.0 and higher or any bales that show excessive grass or other foreign matter, the Buyer has the option to claim and receive a 100-point discount. Any cotton miking 3.4 and lower will be priced at 500 points over applicable CCC loan value. Also, any cotton reduced on account of grass, bark, etc., will apply on contract at 500 points over applicable CCC loan value.
Any quality of cotton produced in this crop that is not specifically described above shall apply at the same price as cotton of comparable Government loan value that is so described in the contract.
It is understood and agreed that all cotton produced on the Sturdivant Group acres ginned through December 7, 1973, is sold at prices already stated, with any cotton ginned on December 8, 1973, and later to apply on the contract at 500 points over applicable CCC 1973 Government loan levels.
It is further understood and agreed that Buyer will establish an irrevocable letter of credit, payable to Producer and Seller, guaranteeing payment under the terms of this contract. This letter of credit is to be established not later than April 1, 1973.
Terms: Greenwood Cotton Exchange Rules.
After identifying gin tag lists along with net mill receiving weights have been received, Staple Cotton Cooperative Association as agent is to invoice the cotton on March 4, 1974.
The contract permitted Sturdivant & Bishop, Inc. to share in gains on the futures market and eventually netted it approximately 53 cents per pound for its cotton. The president of Sturdivant & Bishop, Inc. was a member of the board of directors of the association when the contract was executed.
Mississippi Code Annotated section 79-19-21 (1972) provides in part that:
No director, during the term of his office, shall be a party to a contract for profit with the association, differing in any way from the business relations accorded regular members or holders of common stock of the association.
The spirit of this section is aimed at preventing an association director from using his position of authority to secure a more *382 favorable contract with the association than its regular members enjoy. See Oliver v. Halstead, 196 Va. 992, 86 S.E.2d 858 (1955). The evidence in this case clearly establishes that Sturdivant and Bishop contracted directly with Dunavant and Co. and that the association did not participate in negotiating the contract, but acted only as the marketing agent. The association received its usual charge of $1.-60 per bale as marketing agent for each bale of cotton that passed under the contract. There was simply no “contract for profit with the association, differing in any way from the business relations accorded regular members ... of the association” as contemplated by the statute.
Campbell contends that the execution of the floating price contracts by Sturdivant and Bishop, Inc. and other growers released them from their marketing agreement and, therefore, released him from his contract to deliver his cotton to the association. Campbell relies on Boro-dofsky, supra, which held that when a cooperative association releases some members from their marketing agreement to deliver cotton to the association, such release defeats the purpose of the association and thereby releases all other association members from their marketing agreements. In this case, however, there is no evidence that the association released any of its members from their marketing agreement because the proof showed that a floating price contract is a form of a forward contract that may be entered into by a member under the factor option clause of the marketing agreement.
Campbell further contends that the association should have offered him a floating price forward contract; however, the proof is that the association never offered such a contract to any of its members but such contracts were negotiated between the members and buyers. Campbell and all other members had the privilege of entering into a floating price contract or a forward contract with the buyer of their choice, but were required to designate the association as marketing agent under their membership and marketing agreement.
Campbell’s affirmative defense failed and the association was entitled to the relief granted. We therefore affirm.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, WALKER, BROOM and LEE, JJ., concur.