**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 1999-CT-00848-SCT**
**CONSOLIDATED WITH**
**NO. 1999-CT-01259-SCT**
**CONSOLIDATED WITH**
**NO. 1999-CT-01384-SCT**

*HOWARD CLAYBORNE McDONALD, JR.*

*v.*

*ROSEMARY SHEFFIELD McDONALD*

**ON WRIT OF CERTIORARI**

DATE OF JUDGMENT: 3/17/1999; 7/14/1999; 8/03/1999
TRIAL JUDGE: HON. WILLIAM L. GRIFFIN, JR.
COURT FROM WHICH APPEALED: LEE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT: PRO SE
ATTORNEY FOR APPELLEE: RICHARD L. JONES
NATURE OF THE CASE: CIVIL - DOMESTIC RELATIONS
DISPOSITION: AFFIRMED - 07/01/2004
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This case is before the Court on the issues of child custody and contempt. Howard Clayborne McDonald, Jr. argued that the special chancellor presiding in this case erred in changing custody of his two youngest children from him to his ex-wife, and in holding him in contempt. The Court of Appeals affirmed the judgment of the special chancellor. ***McDonald v. McDonald***, 850 So. 2d 1152 (Miss. Ct. App. 2002). We granted certiorari and after due consideration, we affirm the Court of Appeals and the chancellor.

## FACTS

¶2.     When Howard McDonald was granted a divorce from Rosemary Sheffield McDonald in April of 1998, the Lee County Chancery Court awarded him custody of their two younger daughters, and Rosemary received custody of their oldest daughter. Both parents were granted reasonable visitation, but the chancery court order prohibited visitation in the presence of anyone with whom Rosemary was having an affair. Five months later, Rosemary filed for modification of the final decree, stating that Howard had violated the court's visitation order. Due to the recusal of all three of the Lee County chancellors, Special Chancellor William L. Griffin, Jr., was appointed to preside at the hearing on this matter, and he modified the divorce decree to establish more specific terms for visitation. His order, entered April 14, 1999, was to be temporary[1], and from that order Howard filed his first appeal, in case no. 1999-CA-848.

¶3.     In May 1999 Rosemary filed a motion for contempt against Howard, saying that he had once again interfered with her visitation rights. After a hearing Howard was found in contempt, ordered to pay $1500 in attorney fees, and also ordered to immediately turn over the two younger daughters to Rosemary for extended visitation with her until August 1999. The special chancellor also scheduled a hearing at the end of the visitation period, to review the visitation/custody status. Aggrieved, Howard filed his second appeal, in case no. 1999-CA-1259.

¶4.     In July 1999, Howard McDonald filed a suit in federal district court against the special chancellor and others.[2] That suit notwithstanding, the chancery hearing proceeded on August 3, 1999, and the special

---

[1] Chancellor Griffin explained that the entry of a final order would end his appointment as special judge, thus it would be a temporary order, to become permanent in six months if no problems arose.

[2] The federal suit was dismissed as frivolous. ***McDonald v. Griffin***, 1:99CV226-D-D, 1999 WL 33537119 (N.D. Miss. Oct. 4, 1999), *aff'd,* 228 F.3d 409 (5th Cir. 2000) (table), *cert. den*., 531 U.S. 1150, 121 S. Ct. 1093, 148 L. Ed. 2d 966 (2001).

chancellor entered an order granting temporary custody of the children to Rosemary, ordering Howard to pay child support, and setting a visitation schedule. Howard then filed his third appeal, no. 1999-CA-1384. The appeals were consolidated and assigned to the Court of Appeals. The Court of Appeals affirmed, finding that the special chancellor had proper legal authority to act in this case; that an order to which Howard agreed during a hearing was properly entered, even if he subsequently refused to sign the order; that the chancery clerk and the chancery court had properly computed the appeal costs; that the finding of contempt against Howard was justified by the evidence; and that there was no error in changing custody of the children temporarily by order of August 11, 1999.

¶5. Aggrieved, Howard McDonald petitioned for certiorari in propria persona and this Court granted certiorari.

¶6. After thorough review and consideration, we affirm the Court of Appeals in all respects.

**ANALYSIS**

¶7. The following language appears in the special chancellor's decision:

> The Court, upon receipt of the D.H.S. report and on the motion of either party, may schedule a hearing for the limited purpose of addressing any custody issues which might be raised by the D.H.S. report and which are contrary to today's temporary order. If the D.H.S. report and its recommendations are consistent with today's temporary order, then no hearing will be scheduled.

The chancellor also stated in the decision that "[t]he [c]ourt, therefore, makes the following temporary ruling with regard to child support, visitation and the custody of those minor children . . ." The chancellor's intention was clearly to determine custody temporarily until he could resume the proceedings with a full hearing on the merits pertaining to permanent custody of the children and other matters that are still before the court. Therefore, we do not have jurisdiction to hear the appeal. The following is a more complete excerpt supporting this interpretation:

This Court is of the opinion that pending a resolution of the United States District Court action with regard to William L. Griffin, Junior, all matters now pending before the Court in this cause should be held in abeyance.

It is the ruling of this Court that out of an abundance of caution and pending a resolution with regard to William L. Griffin, Junior, of that United States District Court action heretofore filed by Howard Clayborne McDonald, Junior, all matters pending before the Court will be held in abeyance.

There will be no hearing today; however, there are two children before the Court whose future custody and support must be, at least, temporarily addressed pending the resolution of the United States District Court action.

The following sentence from the chancellor's opinion is crucial: "The Court, upon receipt of the D.H.S. report and on the motion of either party, may schedule a **hearing** for the limited purpose of addressing any custody issues **which might be raised by the D.H.S. report and which are contrary to today's temporary order**." (emphasis added). The chancellor then continued with "If the D.H.S. report and its recommendations are consistent with today's temporary order, then no hearing will be scheduled." We find that the "hearing" referred to in the second sentence refers to the type of "hearing" discussed in the first sentence. The chancellor's statements here do not overrule his earlier statement that the proceedings, including a full hearing on the merits with regard to permanent custody will be held when the federal district court matter has been resolved.

¶8.     The Court of Appeals was correct in its assertion that "[t]he order invited further motions to address custody and support issues. The impediment of the then-pending federal suit against the special chancellor has been removed. We find nothing to review about this explicitly temporary order entered three years ago. *Michael v. Michael*, 650 So. 2d 469, 471 (Miss. 1995) (appellate review of temporary orders is improper.)" *McDonald v. McDonald*, 850 So. 2d 1182, 1193 (Miss. Ct. App. 2002).

4

¶9. Furthermore, the Court of Appeals also ruled that it found "no procedural irregularity in the hearing on the temporary order. . . . The special chancellor made appropriate findings for why he was temporarily changing custody, including Howard McDonald's interference with his former wife's visitation with the children who were in his custody." *Id*.

¶10. The evidence in the record supports the contention that the change of custody was intended to be temporary until the trial court could hold a full hearing on the merits after the litigation pending in federal district court was over. For this reason, the order was not final and permanent, and this Court does not have jurisdiction to review the change of custody.

¶11. We have carefully considered the remaining assignments of error and find that they are without merit. We affirm the judgments of the Court of Appeals and the trial court.

¶12. **AFFIRMED.**

**WALLER, P.J., CARLSON, GRAVES AND RANDOLPH, JJ., CONCUR. COBB, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY AND DICKINSON, JJ. DIAZ, J., NOT PARTICIPATING.**

**COBB, PRESIDING JUSTICE, DISSENTING:**

¶13. This case is a consolidation of three appeals by Howard McDonald, Jr. The majority determined that this Court lacks jurisdiction because the third appeal involved an order for temporary child custody. There are several reasons why I respectfully dissent. First, there are three orders on three different dates appealed from which involve child custody and visitation. The first order modified restrictions that were initially placed on Rosemary's visitation rights; the second order found Howard in contempt for interfering with visitation rights; and the third order, without the benefit of a hearing on the merits, or an emergency situation, modified the existing "permanent" custody granted to Howard, by stating that even though there

5

would be no hearing held, he was "temporarily" modifying custody. There is no issue that the first two orders are appealable, and in my view, so is the third. As we have stated, "[i]t is often said that no child custody order is permanent. Technically, this is correct because custody is always subject to modification in the best interest of the child." ***Blevins v. Bardwell***, 784 So. 2d 166, 170 (Miss. 2001). Custody and visitation orders are routinely appealed despite their modifiable, thus temporary, nature.

¶14. From the record, it appears that the chancellor had no intention of conducting a hearing on the merits of the custody modification, thus the temporary custody was actually permanent in nature. In his bench ruling after the August 3 trial, the chancellor made the following statements:

> There will be no hearing today; however, there are two children before the Court whose future custody and support must be, at least, temporarily addressed pending the resolution of the United States District Court action.[3]
>
> . . .
>
> Until further order of this Court, the temporary custody of Leah and Carie McDonald, two of the minor children of the parties, is granted to Rosemary McDonald . . .
>
> The Court, upon the receipt of the D.H.S. report and upon the motion of either party, may schedule a hearing for the limited purpose of addressing any custody issues which might be raised by the D.H.S. report and which are contrary to today's temporary order. If the D.H.S. report and its recommendations are consistent with today's temporary order, then no hearing will be scheduled.[4]

---

[3] This suit was dismissed two months later, but no hearing on custody was scheduled.

[4] Prior to the chancellor stating that there would be no hearing, he granted D.H.S.'s petition to be excused from performing a home study, and ask that he be informed who would be doing the study and when. Howard offered that the study had already been completed, and that the person who performed the study was in court ready to testify about it. The chancellor refused to hear any testimony.

Thus, unless the D.H.S. report was contrary to his ruling and convinced the chancellor that he had to again modify custody, the decision to modify custody was permanent and without a hearing. Additionally, the chancellor stated:

> In fairness, particularly, to Mr. McDonald, the Court may, upon the motion of either party and after Mr. McDonald's full compliance with Chancery Court Rule 8.05, schedule a hearing for the limited purpose of addressing the issue of child support.

Based on this language, it is reasonable to believe that the chancellor had no intention of scheduling a hearing base on the issue of custody modification. The fact that three years has elapsed without a hearing since the August 16 appeal from this order supports this conclusion.

¶15. The chancellor chose not to hold a hearing when he modified the previously awarded permanent custody of the children.[5] The fact that the chancellor termed his modification of custody "temporary," in my view in no way relieves him of his responsibility to abide by Mississippi law, particularly in this non-emergency setting. "When a decree of custody is to be made or modified in substantial or major aspects, a proper notice and opportunity to be heard must be given to the adverse party." *Gordon v. Gordon,* 196 Miss. 476, 17 So. 2d 191 (1944). Although both parties were present for a hearing, the chancellor allowed no testimony or evidence to be submitted, but simply modified custody, albeit "temporarily."[6]

¶16. It is well settled Mississippi law that to modify child custody, a non-custodial party must prove (1) there has been a substantial change in the circumstances affecting the child; (2) the change adversely affects the children's welfare; and (3) a change in custody is in the best interest of the child. *Bredemeier v. Jackson*, 689 So.2d 770, 775 (Miss. 1997); *Thompson v. Thompson*, 799 So.2d 919, 922 (Miss.

---

[5] The bench ruling of August 3, 1999, stated: "There will be no hearing today."

[6] In an earlier hearing when the chancellor modified visitation, he admitted that he was doing so on a temporary basis so that he would not lose jurisdiction over the case, having been appointed as a special judge to serve until the conclusion of this case.

Ct. App. 2001). In the present case, there was no hearing held, so in no way were the required showings made. The majority opinion quotes the Court of Appeals, stating that the chancellor made appropriate findings for why he was changing custody. The only findings made by the chancellor were in the previous hearing held in June, 1999, in conjunction with a request for modification of visitation, when the chancellor specifically stated "what I am granting is extended visitation. I am not touching custody now."

¶17. There is nothing in the record that supports that there was a hearing held on the merits concerning custody modification, thus Howard's right to a hearing were not honored. Additionally, there is every reason to believe that the "temporary" custody order was in actuality, as permanent as a modifiable custody order may be. Therefore, I respectfully dissent.

**EASLEY AND DICKINSON, JJ., JOIN THIS OPINION.**